MANUEL PÉREZ RODRÍGUEZ, Plaintiff and Appellant, v. SALOMÓN ASSAD HAWAYECK, Defendant and Appellee.

No. 9691. Argued June 2, 1948.—Decided June 25, 1948.

*Francisco Vizcarrondo* for appellant. *Ulpiano Crespo, Jr.* and *Isaías M. Crespo* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Upon this case being called for trial, the matter first discussed was the special defense set up by the defendant that the complaint did not state facts sufficient to constitute a cause of action against him. The lower court sustained that defense relying on our decision in *Ramírez* v. *Registrar*, 61 P.R.R. 300, where we held that a married woman may lease real property without it being an essential requisite that she previously obtain the permission or authorization of her husband. The trial judge in his opinion and judgment stated, however, that it was his view that "a married woman may accept a conveyance for a valuable consideration of property for the conjugal partnership, without the consent of her husband; but she can not by herself bind the partnership to the future payment of money belonging to the conjugal partnership under any contract, unless it be for family expenses, since such an obligation implies an act of administration which imposes liabilities on the partnership and the law is clear to the effect that the husband is the representative and manager of said partnership."

From the judgment thus rendered the plaintiff has appealed, and in his brief he urges that the district court erred

(1) in rendering judgment as it did, despite the fact that it held a different personal view; (2) in denying the motion for reconsideration; (3) in deciding upon said motion that the question of nullity for fraud or mistake was not raised by the complaint; (4) in adjudging him to pay costs; and (5) in holding in the judgment, as well as in the decision on the motion for reconsideration, that the plaintiff lacked a good cause of action.

In *Ramírez* v. *Registrar, supra,* the plaintiff Joaquina Labadie Pellot, leased to the petitioner therein five rural properties for a period of ten years. Upon the corresponding deed being presented for registration, the registrar recorded it with the curable defect that the husband of the lessee had not accepted the contract. The conclusion was reached that the contract of lease was recordable without the defect noted by the registrar.

In Spain, where by express provisions of §§ 61 and 1416 of the Civil Code, respectively, "Neither may the wife, without the permission of her husband, or a power of attorney from him, acquire property for a good or valuable consideration, alienate her property, or contract obligations except in the cases and with the limitations established by law" and "the wife can not bind the property of the conjugal partnership without the consent of the husband," it has been held that the acts executed by the wife without the permission of her husband are not void but voidable, and that by virtue thereof the Directorate of Registries of Spain considers as recordable such acts and contracts executed by the wife without the permission of her husband, provided that said circumstance is set forth in the entry, in order that it be known by such third persons as may later enter into contracts involving the same properties. Manresa, *Comentarios al Código Civil Español,* 6th ed., 1943, vol. 1, p. 410, and vol. IX, *Id.,* 4th ed., 1930, p. 573.

In the Philippine Islands, where there is a Civil Code similar to ours, it is expressly provided by § 1416 that "The

wife can not bind the property of the conjugal partnership without the consent of the husband." And in Louisiana, where as in Puerto Rico the conjugal partnership is recognized, and there is a Civil Code, it is expressly provided by § 122 thereof that "The wife, even when she is separate in estate from her husband, can not alienate, grant, mortgage, acquire, either by gratuitous or incumbered title, unless her husband concurs in the act, or yields his consent in writing."

In Puerto Rico the prohibition against the wife is not so clear and definitive. According to § 91 of our Civil Code, 1930 ed., the husband is the administrator of the conjugal property, except when stipulated otherwise, and the purchases made by the wife out of said conjugal property shall be valid when the said purchase comprises things or articles for the use of the family, in accordance with its social position. However, said Section further provides that the real property may not be alienated or encumbered, such a transaction being void when effected without the express consent of both spouses. In §§ 1312 and 1313 of the same Code those principles are reiterated and in § 1308 it is provided that the conjugal partnership shall be liable for the debts and obligations contracted by the wife "in the cases in which she can legally bind the partnership." Section 93 of the said Code also provides that "the wife may contract, and appear in court, in all cases referring to the defense of her own rights and property. . . ."

In spite of the foregoing provisions, this Court has held that a wife has capacity to acquire real property for the conjugal partnership without the necessity of obtaining the consent of her husband. *Giménez* v. *Registrar*, 21 P.R.R. 314; *Peraza* v. *Registrar of Arecibo*, 30 P.R.R. 496; and *Sojo* v. *Registrar*, 35 P.R.R. 785. Also, that a married woman may sign a conditional contract for the purchase of an automobile, whether or not she has separate property, and to borrow money in her own name, executing a personal promissory note. *E. Solé & Co. S. en C. y Sepúlveda*, 41

P.R.R. 807 and *Fuster* v. *Paonesa*, 43 P.R.R. 729, respectively. Likewise we have declared that a wife may acquire by herself real property for the conjugal partnership, either on a cash or on an installment basis. *Ramírez* v. *Registrar,. supra,,* and *Segarra* v. *Vivaldi,* 59 P.R.R. 797.

There are cases, however, in which by reason of the fact that the wife was engaged in a business or industry, the validity of a lease contract entered into by her in connection with said industry or business, has been sustained. See *Silva* v. *District Court,* 57 P.R.R. 712 and *Quiñones* v. *District Court,* 59 P.R.R. 440. In both these cases, however, what was construed was the scope of § 6 of the Code of Commerce, as amended by Act No. 42 of 1930 (Laws of 1930, p. 320),[1] and not the scope of the Sections of the Civil Code mentioned above.

█ For the purpose of a special defense, such as a motion to dismiss for lack of facts sufficient to constitute a cause of action, all the essential averments of the complaint are assumed to be true. Hence it is necessary to examine the complaint. The latter essentially alleges that the plaintiff is married to Rosa María Rodríguez, who on October 22, 1946, executed before a notary a contract of lease with the defendant, of which the plaintiff had no knowledge whatever; that the plaintiff learned of such contract in January 1947, and he then requested his wife to rescind said contract, as he had not given his consent to the execution thereof, the plaintiff husband being the manager of the conjugal partnership; that the lease in question involves an annual rent of $900

---

[1] "Section 6.—A married woman may freely engage in commerce and industry without other formalities than those required for men. In the business or industry in which a woman may engage, her liability shall be confined to her private property, . . . and she may dispone of all such property without her husband's consent. Community property shall be liable for the results of the trade or industry undertaken by the woman,. provided there is express or tacit consent of the husband. If the husband wishes to express his will that such community property shall not be liable, he shall by means of a writing duly certified, notify his wife and the Mercantile Registry, where an entry thereof shall be made in the margin of the registration of the merchant."

payable in advance, and covers a term of six years; that plaintiff's wife paid the first $900 on the same day of the execution of the contract of lease of a property, which consists of three parcels that are described in the complaint under letters "A", "B" and "C"; and that the money paid by his wife to cover the first annual rent installment belonged to the conjugal partnership. Based on those allegations, and on others which we deem it unnecessary to state, it is prayed that the nullity of the contract of lease entered into by the wife of the plaintiff without the latter's knowledge or consent, be decreed.

 The specific question raised herein has not been decided by us in a contested case.

Commenting on § 1412 of the Spanish Civil Code, which provides that the husband is the manager of the conjugal partnership, Manresa says:

"The conjugal partnership, as all other partnerships, requires management and administration. Since said partnership is constituted by the husband and the wife only, the law had first to determine whether it would grant the management thereof to both of them, jointly or severally, or to only one of them.

"To grant identical powers to both spouses to act by mutual agreement, was indeed to embarass the operation of the partnership, because whenever both managing partners disagreed, as to any matter, judicial intervention would have to be resorted to for a decision, thus giving rise to dispute and quarrels, which would be rendered more serious and deplorable by the fact that they would disturb, not merely the simple relations of associates, but the peace and harmony of a family in its home.

"* * * * * * *

"Logically, it was necessary to grant only to one of the spouses the direction and administration of the conjugal partnership, and the solution in this case offered no doubt. Since the man is a stronger being, more vigorous, more in contact with society and with the outside world, and more relieved from family cares and domestic obligations, he is, of course, in a better position to carry out such management. The husband is the head of the family by the unanimous accord of all legislations, whe-

ther old or modern." IX Manresa, *Comentarios al Código Civil Español* (1930 ed.), p. 568.

The right of the husband to manage the properties belonging to the conjugal partnership, to the exclusion of the wife, is clear. To declare that the wife may bind the conjugal partnership and intervene in the administration thereof by acquiring properties or rights for said partnership *with the funds of the latter*, whether said acquisition is made on a cash or on an installment basis, is equivalent to ignoring the right of administration conferred on the husband by §§ 91 and 1312 of the Civil Code, and to deprive him of the legal representation of the partnership, granted to him by § 93.

██ It is clear that, since the right of administration is vested in the husband, he may in any case permit the wife to execute an act of administration, and he may give his consent thereto expressly or impliedly. If the wife, with the knowledge of her husband and without any protest from him, performs an act of administration, we have no doubt that the act is valid notwithstanding the provisions of §§ 91 and 1312 of the Civil Code. However, if the husband, upon becoming aware of the act of administration repudiates it within a reasonable time, and so advises the person who contracted with his wife, the act will be void. But so long as the husband does not repudiate it, the act thus executed will be merely voidable and its nullity can only be invoked by the husband, whose right of administration has been usurped.[2]

The following paragraph from Manresa, although it deals with marital authorization, undoubtedly is also applicable to cases like the present one, where the wife executes acts of administration affecting the conjugal partnership without the consent of her husband:

"The decisions of the Supreme Court prior to the Civil Code, which should be considered as applicable even after said code took effect, inasmuch as they were not substantially modified

---

[2] The Code does not provide in any of its Sections that the act of a wife in such a case is void.

on this point by our legislation, held that the permission granted by the husband to the wife for her to contract could be given in any form, provided it was set forth that the husband consented to, and approved the obligations contracted by his wife; that the husband was the only one entitled to seek the annulment of the acts or contracts entered into by his wife, without his intervention or permission, and that, therefore, such acts should not be considered void as of course, *but merely voidable,* as may be seen from an examination of the judgments of October 10, 1861; November 14, 1862; June 20, 1863; June 27, 1866; October 9, 1868; January 30, 1872; June 22, 1880 and several other decisions." (Italics ours.) 1 Manresa, *Comentarios al Código Civil Español* (1943 ed.), p. 406.

The reasoning of the opinion in the case of *Giménez* v. *Registrar*, 21 P.R.R. 314, which has served as a precedent for all the other cases on this subject, rests mainly on the fact that when the Revised Civil Code was approved, § 61 of the Spanish Civil Code was omitted, and to such an omission is erroneously attributed a significance which it does not have with reference to the specific question under discussion. In this connection it is stated in said case, at page 316:

"It is true that the husband is the administrative head of the conjugal partnership, but it does not necessarily follow that the wife is incapacitated to accept a deed of conveyance without his consent. Aside from the mere question of administration, our attention has been drawn to no section of the code that draws any distinction whatsoever between the spouses, and the general tenor and spirit of the law in dealing with husband and wife and community property consistently negatives such idea of any further distinction. The significant omission from our local code of article 61 of the Spanish Code, which expressly provides that the wife cannot without permission or power of attorney from her husband acquire either by onerous or lucrative title, nor alienate her property nor bind herself except in the cases and under the restrictions provided for by law, also clearly indicates, to say the least, that we should not be unmindful of the maxim *ubi lex non distinguit, nec nos distinguere debemus.*"

The omission of § 61 is not significant if account is taken of the other Sections of the Spanish Civil Code, which were also omitted and which limited the capacity of a married woman to dispose of her separate property and even to appear in judicial proceedings except in very rare cases.[3] In this connection it should be borne in mind that, although under § 1384 of the Spanish Civil Code the wife had the management of the paraphernal or separate property, according to § 1387 she could not alienate, encumber or mortgage it *without the permission of her husband, or appear in court to litigate with regard to the same*, unless she had been judicially authorized to do so. But when § 160 of the Revised Civil Code (substantially similar to § 92 of the 1930 ed.) acknowledged to a married woman the right not only to manage her separate estate but also to encumber or alienate it without the intervention of her husband, and when § 161 of the same Code (similar to § 93 of the 1930 ed.) also granted to her the right to contract and appear in court in all cases referring to the defense of her own rights or property, to discharge the functions of *patria potestas*, guardianship, or administration that might be conferred on her by law, and to the exercise of a profession, employment or occupation, it became imperative for the framers of the new Code in order to be consistent with the modifications which the capacity of married women had undergone, to eliminate § 61 of the Spanish Civil Code. This Court, in the case of *Giménez* v. *Registrar, supra,* also lost sight of the fact that the lack of power [4] of the wife to assume the management of the

---

[3] Section 60, Spanish Civil Code.—"The husband is the representative of the wife. The latter cannot, without his permission, appear in any judicial proceeding in person or by attorney.

"Nevertheless, she shall not require such permission to defend herself in a criminal proceeding, or to commence an action against her husband or defend herself in any action brought against her by him, or when she has been authorized to become a party to a suit in accordance with the provisions of the law of Civil Procedure."

[4] Such lack of power, in our judgment, can not be characterized as incapacity.

properties of the conjugal partnership without the express or implied authorization of the husband was not due, under the Spanish Civil Code, to § 61, but to §§ 55 and 1412, which conferred on the husband said management to the exclusion of the wife. Therefore, the failure to adopt § 61 of the Spanish Civil Code in this jurisdiction, did not impair in any way the right of the husband to manage the property of the conjugal partnership, to the exclusion of the wife.

 Since the contract made by the wife under the stated circumstances is voidable at the instance of the husband, the complaint, in our opinion, states facts sufficient to constitute a cause of action and the judgment should be reversed and the case remanded to the lower court for further proceedings.[5]

---

[5] The previous decisions of this Court should not be considered as overruled. In none of those cases the husband alleged the nullity of the transaction involved. Most of them were appeals from the decisions of registrars, who, in accordance with the doctrine of Morell, to which we shall presently refer, are bound to make the registration sought without ᴖurable defects, as stated in our cases, *but setting forth the fact* that the wife was not authorized by the husband to execute the act or contract entered into.

Referring to the acts and contracts executed by married women without the permission of their husbands, Morell says:

"Finally, the general Directorate changed its views in its Decisions of August 22, 1894, and November 23, 1892. According to the Rule laid down by said decisions, the acts and contracts executed by married women without the permission of their husband are not necessarily void and hence the defect should not be considered as incurable. Nor can we characterize it as curable, since the lack of marital permission is not a mere formal defect which only affects the validity of the title, but reaching the very essence of the obligation, it vitiates it in one of its internal requisites, the capacity. The act should properly be characterized as voidable or rescindable, *since before it is annulled or rescinded it can and should produce full legal effect,* and this is so acknowledged in the above-cited judgments of the Supreme Court. *Therefore, such a defect does not preclude the registration of the contract,* which would be proper and should be made according to law, stating the indicated circumstances in the entry, so that it may be known by third persons who may later contract with reference to the same properties. That doctrine is confirmed in the Decision of August 25, 1911." (Italics ours.) 2 Morell, *Legislación Hipotecaria* (1917 ed.), p. 320.